# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION


REGINA M. GRENAUER,

       **Plaintiff,**

                                      **Civil Action 2:17-cv-00967**
                                        **Judge Michael H. Watson**
     **v.**                            **Chief Magistrate Judge Elizabeth P. Deavers**


COMMISSIONER OF SOCIAL
SECURITY,

       **Defendant.**


## REPORT AND RECOMMENDATION

      Plaintiff, Regina M. Grenauer ("Plaintiff"), brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security ("Commissioner") denying

her application for Social Security Disability Insurance benefits ("SSDI").  This matter is before

the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of

Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's

Reply (ECF No. 18), and the administrative record (ECF No. 11).  For the following reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner's decision.

## I.  BACKGROUND

      Plaintiff applied for disability benefits on March 15, 2011, alleging disability beginning

March 15, 2003.  (R. at 217–221.)  Plaintiff's claim was denied initially and upon

reconsideration.  (R. at 99–111.)  Upon request, a hearing was held on May 9, 2013, in which

Plaintiff, represented by counsel, appeared and testified. (R. at 16–39.) A vocational expert, John Finch, also appeared and testified at the hearing. (*Id.*) On July 12, 2013, Administrative Law Judge Paul E. Yerian ("the ALJ") issued a decision finding that Plaintiff was not disabled at any time from May 13, 2003, through the date of the administrative decision. (R. at 19–32.) On December 19, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–3.) Plaintiff filed a Complaint on February 10, 2015, in a case captioned *Grenauer v. Commissioner of Soc. Sec.*, Case No. 2:15-cv-555. On January 25, 2016, the Court reversed the Commissioner's decision and remanded the case for further consideration of the opinion of Plaintiff's treating provider, W. Jerry Mysiw, M.D. (R. at 1423–38.)

Upon remand, a second hearing was held on September 19, 2016, in which Plaintiff, represented by counsel, appeared and testified. (R. at 1396–1416.) A vocational expert, Connie O'Brian, also appeared and testified at the hearing. (*Id.*) On January 12, 2017, ALJ Yerrian issued a decision that again found that Plaintiff was not disabled at any time from May 13, 2003, through the date of the administrative decision. (R. at 1518–20.) The Appeals Council declined to assume jurisdiction, thereby making the ALJ's decision the final decision of the Commissioner. (R. at 1361–63.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT HEARING TESTIMONY

### A. First Hearing – May 9, 2013

At the first administrative hearing on May 9, 2013, Plaintiff testified that she attempted to return part-time to her previous work as a prosecutor after her injury. (R. 56.) Within one week, she experienced a seizure and she was having difficulty reading paperwork. (*Id.*) In 2004 and

2005, Plaintiff worked as a part-time bartender, but had difficulty making drinks and giving correct change.  (R. at 63–64.)  Plaintiff reported that the medication Trileptal helped with her seizures initially, but after about a year she began experiencing one or two seizures per month.  (R. at 50–51, 52.)  Plaintiff explained that, after she experiences a seizure, she usually must remain in bed for two days and, during that time, she relies on others to help her.  (R. at 53.)  Plaintiff reported that she has not been able to read or write and that she has had difficulty with her memory since her injury.  (R. at 55–56.)  She stated that she can complete simple household tasks but relies on friends to assist her with more difficult tasks, such as handling bills.  (R. at 57–58.)  Plaintiff also reported experiencing double vision, tremors, and depression since her injury.  (R. at 59–61.)  She denied any current use of alcohol or other substance abuse at the hearing.  (R. at 65–66.)

### B.  Second Hearing – September 19, 2016

After the case was remanded, Plaintiff testified at another hearing on September 19, 2016 before ALJ Yerian.  (R. at 1394–1416.)  Plaintiff reported that, since the previous hearing in May 2013, she has not had any significant changes in her medical condition.  (R. at 1402.)  She indicated that she is still experiencing seizures but has switched to a different medication.  (*Id.*)  She reported experiencing seizures about once per week.  (R. at 1403.)  Plaintiff described that "[t]hey put [her] out for about three days."  (*Id.*)  She continued to have difficulty reading.  (*Id.*)  She denied any use of alcohol or marijuana.  (R. at 1403–04.)

### III.  RELEVANT RECORD TESTIMONY

Plaintiff suffered a severe traumatic brain injury as a result of falling down her stairs on May 16, 2003.  (R. at 317.)  CT scans at the time of her injury revealed a subarachnoid hemorrhage in the foraman magnum, basilar skull fracture, and bilateral frontal contusions.  (*Id.*)

Specifically relevant to this Report and Recommendation is the medical opinions of W. Jerry Mysiw, M.D. Dr. Mysiw is Plaintiff's treating physiatrist. (R. at 1379.) On September 28, 2012, Dr. Mysiw provided the following narrative report:

> I have been following Ms. Grenauer since 8/31/11, for a Traumatic Brain Injury she sustained in May, 2003. Secondary to her traumatic brain injury she has chronic headache, anxiety, personality changes, binocular vision deficits, seizure, fatigue, cognitive impairments and depression. Future visits will be required to address her sleep, executive dysfunction, and poor frustration levels with current treatment plan consisting of medication management. I reviewed her past medical records and it is apparent that since her initial head injury she began having the identical symptoms/diagnoses that I now treat her for. To the best of my knowledge Ms. Grenauer has been permanently and totally disabled since her initial injury. I do consider Ms. Grenauer an appropriate candidate for Social Security Benefits; she certainly meets your criteria for the allowed assistance. It is my professional medical opinion that Mrs. Grenauer is considered to be totally disabled and will remain unable to retain remunerative employment.

(R. at 1228–1230.)

On August 2, 2016, Dr. Mysiw conducted a mental RFC assessment of Plaintiff in which he noted Plaintiff's capacities in various categories: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. at 1651–1653.) On September 19, 2016, Dr. Mysiw prepared another narrative report:

> . . . Ms. Grenauer's continues to struggle with memory and attention problems. She also has problem commonly found after a frontal lobe injury in that she has diminished insight, organizational and initiation skills. Therefor[e] it is very difficult for her to manage her own home and live independently without some supervision and support. Also, she never fully regained her language skills. Her verbal expression is functional but her ability to understand complex conversations is limited. In addition she never regained reading and writing skills that are functional.
>
> Ms. Grenauer's recovery was initially compromised by continued alcohol use or abuse. That is now seemingly controlled and no longer a factor. Despite that, she has never regained the functional skills to return to work. In fact the nature of her cognition limitations, the impaired insight and impulse control, the problems she has with organization and task completion and the language deficits make it difficult for her to live independently without support. Her recovery is stable. She

4

will never improve enough to sustain work related activities and she will never be
fully independent.

(R. at 1711.)

## IV.  ADMINISTRATIVE DECISION

On January 12, 2017, the ALJ issued his decision.  (R. at 1367–1393.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

gainful activity since May 15, 2003, her alleged onset date, through December 31, 2005, and

December 31, 2010, her date last insured.  (R. at 1373.)  At step two, the ALJ found that Plaintiff

has the following severe impairments:  traumatic brain injury, seizure disorder, cognitive

disorder, and a history of alcohol abuse.  (R. at 1373.)  The ALJ found that Plaintiff did not have

an impairment or combination of impairments that meets or medically equals the severity of one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 1373.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or
   equal the criteria of an impairment set forth in the Commissioner's Listing of
   Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant
   perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual
   functional capacity, can the claimant perform other work available in the national
   economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster
v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> [A] full range of work at all exertional levels but with the following non-exertional
> limitations: could not climb ladders/ropes/scaffolds; could not work around hazards
> such as unprotected heights or dangerous machinery; could not engage in
> commercial driving. Mentally, the claimant was limited to simple, repetitive tasks
> in an a relatively static environment characterized by infrequent changes in work
> duties or processes and not involving a fast assembly-line pace, strict production
> quotas, or more than occasional contact with co-workers and supervisors with no
> direct interaction with the public. The claimant would have been able to maintain
> attention and concentration for two-hour segments.

(R. at 1376.)

The ALJ decided that this RFC precluded Plaintiff from performing her past relevant

work as an attorney. (R. at 1382.) The ALJ found that considering Plaintiff's age, education,

work experience, and RFC, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform. (R. at 1382–83.) He therefore concluded that Plaintiff was

not disabled under the Social Security Act any time from May 15, 2003, her alleged onset date,

through the date last insured. (R. at 1384.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the [Social Security Administration] fails to

follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of*

*Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth three statements of error. First, Plaintiff asserts that the ALJ failed to

accord controlling weight to the opinion of the her treating physician, Dr. Mysiw. (ECF No. 12

at 9–13.) Plaintiff next contends that the ALJ failed to account for the full range of Plaintiff's

severe impairments in his residual functional capacity determination. (*Id.* at 14–16.) Finally,

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.

(*Id.* at 16–18.)

## A. First Contention of Error – Treating Physician

Turning to her first statement of error, the ALJ concluded that "[b]ased on the evidence in the record I cannot give much weight to Dr. Mysiw's ratings regarding the claimant's mental limitations . . . prior December 31, 2010," her date last insured. (R. at 1379.) In support of his conclusion, the ALJ found as follows:

> At the psychiatric evaluation on February 19, 2007, the claimant stated that she had friends, had shared custody with her son, could do housework, and used the computer but that reading and using the computer was difficult. She could occasionally e-mail, but her major interest was her son. She usually could reason well, reading and writing activities were hard for her, remote memory was strong, but she had trouble with word finding and recent memory. On mental status examination she was able to recall two out of three objects after five minutes, did five calculations without error, and named one out of five states surrounding Ohio (Exhibit l lF). By April 21, 2008, on mental status examination the claimant knew the names of government officials and performed serial seven subtraction "well." There is also evidence that the claimant's symptoms increased after December 31, 2010. On October 29, 2012, the claimant incurred another head injury with a subdural hematoma, brain herniation, and midline shift that required another operation. She incurred the head injury while climbing out of a boat (Exhibit 40F). Furthermore, Dr. Mysiw notes fatigue as one of his findings, and evidence shows that in October 2012 it was noted that the claimant's fatigue was a "relatively new symptom" (Exhibit 44, p. 2). Thus, prior to her dates last insured, the claimant appears to have been more functional than that indicated by Dr. Mysiw. Finally, regarding Dr. Mysiw's statements that the claimant is disabled, there is no indication that the doctor is aware of the Social Security Administration's definition of disability. In addition, as previously explained, the statement that the claimant is disabled is reserved for the Commissioner. And for these reasons I can only give Dr. Mysiw's opinions little weight.

(R. at 1379–80.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889,

2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court

of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir.1999). The requirement also ensures that the ALJ applies the treating physician
> rule and permits meaningful review of the ALJ's application of the rule. *See
> Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important

when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v.

Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the Wilson

factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222

(6th Cir. 2010) (indicating that, under Blakley and the good reason rule, an ALJ is not required to

explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical

opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a

claimant's residual functional capacity.  20 C.F.R. § 404.1527(e).  Although the ALJ will

consider opinions of treating physicians "on the nature and severity of your impairment(s),"

opinions on issues reserved to the Commissioner are generally not entitled to special

significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Dr. Mysiw is a treating physician and that his opinion

is entitled to controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the

claimant's] case record . . . ."  20 C.F.R. § 404.1527(d)(2).  However, the ALJ determined that

Dr. Mysiw's opinions *were* inconsistent with other substantial evidence in the record and he therefore assigned little weight to Dr. Mysiw's opinions. (R. at 1379–80.) In support of his conclusion, the ALJ cited a February 2007 psychiatric evaluation, an April 2018 mental status examination, and Plaintiff's hearing testimony regarding her daily activities. (R. at 1379.)

Plaintiff contends that the ALJ failed to properly evaluate and weigh Dr. Mysiw's opinion and instead provided nearly the same rationale as he did in his first decision, which was reversed and remanded by this Court. (ECF No. 12 at 9–10.) The Commissioner asserts that the ALJ's decision specifically lays out three sources from the record that he found to be inconsistent with Dr. Mysiw's findings and that therefore the ALJ appropriately weighed Dr. Mysiw's opinions, providing good reasons for rejecting it. (ECF No. 13 at 6–8.)

The Undersigned agrees with the Commissioner that the ALJ provided sufficient "good reason" under the applicable regulations for assigning non-controlling weight to the treating physician's opinions. The ALJ reasonably rejected Dr. Mysiw's conclusion that Plaintiff is "totally disabled" and unemployable, as that determination is reserved to the Commissioner. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) ("When a treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled or unable to work—the opinion is not entitled to any particular weight") (internal citations omitted). Moreover, the ALJ cited other record evidence inconsistent with Dr. Mysiw's findings. (R. at 1379.) Specifically, the ALJ pointed to evaluations from February 2007 and April 2008 in which Plaintiff was able to perform calculations, recall objects, and recite names of government officials. (*Id.*) The ALJ also found that Plaintiff's daily activities such as sharing custody of her son, doing housework, and using the computer were inconsistent with Dr. Mysiw's opinions. (*Id.*) Finally, the ALJ found that the record contains evidence that Plaintiff's

intervening head injury, which occurred in October 2012, increased her symptoms after her date last insured. (*Id.*)

Substantial evidence supports the ALJ's conclusion that the record contains evidence inconsistent with Dr. Mysiw's opinions and, specifically, that Plaintiff was more functional prior to her date last insured than Dr. Mysiw's opinions conclude. The Sixth Circuit has held that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted).

The ALJ followed the proper analysis and adhered to the treating physician rule, providing "good reasons" for assigning less than controlling weight to Dr. Mysiw's opinions. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED.**

### B. Second Contention of Error – RFC Determination

Plaintiff's second contention of error is that the ALJ failed to account for the full range of Plaintiff's severe impairments in his RFC determination. (ECF No. 12 at 14–16.) The ALJ's RFC determination with respect to Plaintiff's mental capacity is as follows:

> Mentally, the claimant was limited to simple, repetitive tasks in an a relatively static environment characterized by infrequent changes in work duties or processes and not involving a fast assembly-line pace, strict production quotas, or more than occasional contact with co-workers and supervisors with no direct interaction with the public. The claimant would have been able to maintain attention and concentration for two-hour segments.

(R. at 1376.) The ALJ provided the following analysis of Plaintiff's mental impairments in his analysis in support of his RFC determination:

> Mentally, the claimant does have residual cognitive difficulties as well as depression due to her injury as well as personal problems, such as her divorce and custody dispute. In April 2004 it was noted that her mental status was "reasonably

intact." At times she had difficulty with word "blocking" and was tearful regarding her inability to work as a lawyer. However, she was alert, oriented, and appropriate (Exhibit 5F). At the August 2005 psychiatric examination, her mood was pleasant, and affect appropriate. She remembered three out of three items, in reverse order, repeated five digits forward and backwards, spelled "world" backwards, and performed serial sevens with only one error. Thought processes were logical. However, she could not remember Reagan or Carter, even with hints (Exhibit 8F). At the psychiatric examination in February 2007, she was depressed with some elements of post-traumatic stress disorder. However, general fund of knowledge was above average, and she recalled two out of three objects and performed five calculations without error (Exhibit l lF). Then in April 2008, the claimant was able to perform serial seven subtraction and [k]new the name of government officials (Exhibit 12F). More recently, in January 2011, thought process was linear and goal directed. It was noted that she was functioning well, was very well adjusted, and looked happy (Exhibit 14F, p. 5). Moreover, in February 2012 Dr. Mysiw stated that the claimant's mood was within normal limits and affect was normal, although there were still cognitive deficits (Exhibit 24F, pp. 5–6). Considering the claimant's cognitive difficulties and history of depression but with generally normal mental status examinations as described above, during the period at issue she would have been limited as found above.

(R. at 1376.)

Plaintiff contends that the ALJ "failed to acknowledge the severe me[n]tal impairments that developed as a result of" Plaintiff's traumatic brain injury and cognitive disorder, including "severe impairment of her mood with depression, personality changes, fatigue, sleep disturbance, emotional lability, memory impairment and impairment of concentration and attention." (*Id.* at 14.) Plaintiff maintains that the ALJ should have included appropriate limitations for these mental impairments in his RFC determination. (*Id.* at 15.)

The Commissioner asserts that, although the ALJ did not expressly name each of Plaintiff's mental limitations, "he acknowledged that Plaintiff had personal problems, depression with some elements of post-traumatic stress disorder, problems reading, problems with her memory and mood disorder." (ECF No. 17 at 14.) In his analysis of Plaintiff's ability to work, the Commissioner maintains that the ALJ "acknowledged that 'the claimant does have residual

cognitive difficulties as well as depression due to her injury as well as personal problems.'" (*Id.*, citing R. at 1376.) The Commissioner argues that because no medical opinion shows that these mental impairments require work-related limitations, it was reasonable for the ALJ to not include such restrictions in his RFC determination. (*Id.* at 15–16.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must

14

also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

"While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). Indeed, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x at 198.)

Here, the ALJ's RFC determination accounted for mental and social limitations, finding that Plaintiff could only engage in simple, repetitive tasks in a relatively static environment with infrequent changes in work duties or processes, and could only maintain attention and concentration in two-hour segments. (R. at 1376.) Medical evidence substantially supports the ALJ's determination of Plaintiff's RFC even though it does not specifically identify each mental impairment or symptom Plaintiff experienced. In support of his RFC determination, the ALJ pointed to medical opinions that described Plaintiff's mental functioning, including opinions that Plaintiff was "alert, oriented, and appropriate," that Plaintiff was able to perform various cognitive tests with logical thought processes. (R. at 1376, citing R. at 339–342, 483–487, 524–526, 527–528, 587–617.) The ALJ concluded that, although Plaintiff did experience some cognitive difficulties and a history of depression, her mental status examinations were generally normal and the RFC limitation appropriately considered those difficulties. (*Id.*)

To the extent Plaintiff argues that the ALJ should have incorporated more restrictions in this RFC based on these alleged severe impairments, she has failed to adduce any evidence that the impairments required work-related limitations. Further, evidence of a diagnoses does not say anything about the severity of an impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining that the "mere diagnosis of [the condition] . . . says nothing about the severity of the condition") (internal citation omitted).

The Undersigned finds that substantial evidence demonstrates that the ALJ's assessment of Plaintiff's RFC adequately accounted for all of the limitations that he found credible. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). It is therefore **RECOMMENDED** that Plaintiff's second contention of error based on her mental RFC determination be **OVERRULED**

### C. Plaintiff's Third Contention of Error – Credibility

Plaintiff's final contention of error is that the ALJ's credibility determination is not supported by substantial evidence. Plaintiff represents that she has "undergone MRIs, EEGs, CT scans, blood tests, physical therapy, occupational therapy, vocational rehabilitation, cognitive rehabilitation and has seen multiple specialists in an effort to reduce or improve her symptoms" and that, despite the evidence of treatment on the record, she "still experiences debilitating symptoms as a result of her traumatic brain injury to this day." (ECF No. 12 at 16.) She asserts that the ALJ improperly evaluated her credibility because her testimony is corroborated by objective evidence on

the record and evidence of her ability to perform daily living activities cannot be equated with an ability to perform competitive work. (*Id.* at 16–17.)

The Commissioner asserts that Plaintiff has confused the ALJ's decision on this issue. (ECF No. 17 at 17.) Instead of citing Plaintiff's daily activities as evidence that she could perform full-time work, the Commissioner contends that the ALJ cited to Plaintiff's daily activities "to demonstrate her level of activity during the period that she alleged she was disabled." (*Id.*) The Commissioner further asserts that the ALJ found that Plaintiff was moderately limited in carrying out daily activities, but that this does not equate to a finding that she is disabled. (*Id.*, citing R. at 1374.) In support of his credibility determination, the ALJ pointed to inconsistent statements by Plaintiff, Plaintiff's non-compliance with her seizure medication, and Plaintiff's use of alcohol during the relevant time period. (*Id.* at 18–20.)

The Court of Appeals for the Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining

to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).

Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029 (March 2016)[2]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at

---

[2] SSR 16-3p, which became effective in March 2016, superseded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1 (March 2016).

*9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted). The Court of Appeals for the Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Here, the ALJ concluded that Plaintiff's statements regarding her symptoms were not credible to the extent that they were inconsistent with medical evidence in the record:

> At the supplemental hearing the claimant testified that there has not been any significant change in her condition since the prior hearing other than she is on another medication for her seizures that she is still having. Over the last three years she has been having seizures two, probably three, maybe once a week. She is still having difficulty reading, and her friend reads her mail to her. If it is a bill she can see the amount, but her friend has to help fill out the checks. And since the last hearing she has not had any alcohol.

> After careful consideration of the evidence, and in addition to the discussion of the claimant's symptomatology from her first hearing (Exhibit 8A), I find that the claimant's medically determinable impairments could reasonably be expected to produce some of the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

(R. at 1381.)

Even if the Undersigned agreed with Plaintiff's arguments regarding her credibility, the ALJ provided justifications for his finding. The ALJ's discussion on this issue supplies substantial evidence supporting his credibility finding and that he properly considered the requisite factors in making his determination. Moreover, the ALJ also reasonably considered the

record evidence reflecting Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). Because Plaintiff alleged that her impairments were so severe that she could not perform any work, the ALJ properly noted that she was able to care for herself and her son, use a computer, do some household chores, and use electronic devises in discounting her credibility. The record supports the ALJ's finding in this regard.

In sum, the Undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence. Accordingly, applying the applicable deferential standard of review, the Court concludes that the ALJ's credibility determination was not erroneous. It is therefore **RECOMMENDED** that Plaintiff's contention of error based on the ALJ's consideration of his subjective complaints be **OVERRULED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed,

appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).

Date: December 13, 2019                     */s/ Elizabeth A. Preston Deavers*_____
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **CHIEF UNITED STATES MAGISTRATE JUDGE**